IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HUMBOLDT BAYKEEPER and
ECOLOGICAL RIGHTS FOUNDATION,

    Plaintiffs,

  v.

UNION PACIFIC RAILROAD COMPANY
and NORTH COAST RAILROAD
AUTHORITY,

    Defendants.

No. C 06-02560 JSW

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Now before the Court is the motion by defendant Union Pacific Railroad Company ("Union Pacific") and defendant CUE VI, LLC ("CUE VI") (collectively, "Defendants") to dismiss the Second Amended Complaint ("SAC") filed by plaintiffs Humboldt Baykeeper and Ecological Rights Foundation ("Plaintiffs").[1] The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for May 18, 2007 is HEREBY VACATED. Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby grants Defendants' motion to dismiss.

**BACKGROUND**

In this action, Plaintiffs allege that Defendants have unlawfully discharged pollutants from a 30-acre property located in Eureka, California which Plaintiffs refer to as the "Balloon

---

[1] The Court grants North Coast Railroad Authority's ("NCRA") joinder to Defendants' motion. The Court also grants Plaintiffs' request for judicial. *See* Fed. R. Evid. 201.

1  Track" into "waters of the United States." (FAC, ¶ 9.) Plaintiffs further allege that Union
2  Pacific allowed its individual National Pollutant Discharge Elimination System ("NPDES")
3  permit to expire in 1986 and has not applied for a new permit regulating the discharges of
4  pollutants from the Balloon Track. (*Id*., ¶¶ 46-49.) Nor have Defendants, according to
5  Plaintiffs, filed a Notice of Intent to obtain coverage under the Industrial Storm Water Permit
6  for storm water discharges at the Balloon Track. (*Id*., ¶ 50.) Based on these alleged discharges,
7  Plaintiffs contend that Defendants are violating the Clean Water Act ("CWA"), 33 U.S.C. §
8  1251, *et seq*., California's General Permit for Discharges of Storm Water Associated with
9  Industrial Activity, the Nation Pollutant Discharge Elimination System ("NPDES") General
10 Permit No. CAS000001, the Regional Board's Cleanup and Abatement Order, and the
11 Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq*.

12 Union Pacific and NCRA filed motions to dismiss Plaintiffs' first amended complaint.
13 On November 27, 2006, the Court issued an order in which it granted in part and denied in part
14 these motions. The Court held that Plaintiffs' notice required by the CWA was sufficient and
15 that Plaintiffs sufficiently alleged their: (1) CWA claim based on Defendants' failure to apply
16 for a NPDES permit; (2) CWA claim for discharging pollutants without a NPDES permit; (3)
17 CWA claims based on Defendants' failure to obtain coverage under and comply with the
18 California Industrial General Permit; and (4) RCRA claim. However, the Court found that
19 Plaintiffs' claim premised on Defendants' alleged violation of a Cleanup and Abatement Order
20 ("CAO") issued by the Regional Board in 2001 and two associated monitoring and reporting
21 programs was deficient as a matter of law and, thus, granted Defendants' motions to dismiss
22 this claim.

23 CUE VI then moved to intervene as a defendant in this action. The parties stipulated to
24 CUE VI's intervention and to Plaintiffs' filing an amended complaint naming CUE VI as a
25 defendant. Defendants, including CUE VI, now move to dismiss Plaintiffs' third through ninth
26 claims in their SAC.

27 The Court will address additional specific facts as required in the analysis.
28

2

## ANALYSIS

**A.    Legal Standards on a Motion to Dismiss.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, while as a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion," the Court may consider documents attached to the complaint, documents relied upon but not attached to the complaint when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted); *see also Hal Roach Studios, Inc. v. Richmond & Feiner Co., Inc.*, 806 F.2d 1542, 1555 n.19 (9th Cir. 1989).

**B.    Defendants' Motions to Dismiss.**

**1.    Plaintiffs' Ninth Claim Fails as a Matter of Law.**

In an order issued on November 27, 2006, the Court dismissed Plaintiffs' ninth claim under the CWA, alleging that Union Pacific is violating the terms of a CAO. The Court found that the CAO did not appear to regulate discharges from *point sources*, a prerequisite to any CWA claim. (Order at 9; *see Oregon Natural Resources Council v. U.S. Forest Service*, 834 F.2d 842, 849 (9th Cir. 1987).) The Court noted that the CAO ordered Union Pacific to submit an interim remedial plan "to address onsite soil impacted with concentrations of Site

3

contaminants" and to include "[m]itigation measures to prevent *potential migration* of residual soil contamination to groundwater and/or surface water bodies ..." (SAC, Ex. C to Attachment 1 at p.13) (emphasis added).

Without seeking leave to file a motion for reconsideration or leave to file an amended complaint, Plaintiffs filed an amended CWA claim premised on the CAO. Plaintiffs inserted the following new allegations regarding the CAO:

> 114.  Plaintiffs are informed and believe, and thereon allege, that the polluted storm water, groundwater and non-storm water, or wastewater, that discharges from the ditches, culverts, and other conveyances on the Balloon Track are discharges from "point sources" as defined by the Clean Water Act.
> 115.  Plaintiffs are informed and believe, and thereon allege, that the CAO regulates the point source discharges of polluted storm water, polluted groundwater and non-stormwater at the Balloon Track. *See e.g.* paragraphs 11-13 of the CAO, Exhibit C to Attachment 1.
> 116.  Among other things, the CAO requires sampling of polluted storm water at the Balloon Track, including when it is discharged from point sources at the Balloon Track.
> ...
> 118.  The CAO regulates point source discharges by, among other things: requiring the discharger to develop an interim remedial action plan which will prevent discharges from the various ditches, channels, and discrete conveyances on-site from causing or threatening to cause pollution or nuisance in the local waterways, including Clark Slough and Humbolt Bay; requiring the discharger to monitor various point source outfalls, such as the ditches and channels, at the Balloon Track; and clean up and abate the discharges and threatened discharges to prevent pollution and nuisances such that concentrations of pollutants in discharges do not exceed the "water quality objectives" set forth in Paragraph 14 of the CAO.

(SAC, ¶¶ 114-118.)

Although Plaintiffs have made an effort to allege that the CAO regulates point source discharges, they cannot alter, through allegations, the language of the CAO itself. Upon review of the CAO, the Court, again, finds that it does not appear to regulate discharges from point sources. The CAO notes that "[r]esidual petroleum is present at various concentrations in the soil throughout the former operational areas ... . Lead and copper in excess of hazardous waste criteria are found primarily in the former oil disposal pit area. ... Petroleum, metals, and related contaminants have been detected sporadically in groundwater." (Compl., Ex. C to Attachment 1, ¶ 8.) The CAO further notes that surface waters, including intermittent on-site wetlands, are threatened by the discharges at the Site. (*Id*. at ¶ 11.) Although the CAO does not specify the

4

type of discharges to which it is referring, the CAO's findings regarding residual soil pollution and the dangers such pollution pose to surface waters must be read in light of what remedial measures the CAO actually orders Union Pacific to take. The CAO requires Union Pacific to "address onsite soil impacted with concentrations of Site contaminants ..." and to take "[m]itigation measures to prevent potential migration of residual soil contamination to groundwater and/or surface water bodies..." (*Id*. at p.13.) Thus, the Court finds that the CAO addresses the potential migration of soil contamination to groundwater and/or surface water, and thus, is directed at disperse non-point source discharges. Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' ninth claim.

### 2. Plaintiffs' Third Through Eighth Claims.

Plaintiffs' third through eighth claims are premised on Defendants' alleged failure to obtain coverage under and comply with the California Industrial General Permit. Defendants argue again that because they did not file a notice of intent to comply with the Industrial General Permit, they are not authorized to discharge pursuant to, nor required to comply with, its terms. When Union Pacific initially moved to dismiss these claims, CUE VI had not yet joined in this action and, thus, did not have an opportunity to present its arguments.[2]

In support of its motion, Defendants cite to the federal regulations applicable to a state's issuance of a general permit. In particular, they point to 40 C.F.R. § 122.28(b), which provides, in pertinent part:

> Except as provided in paragraphs (b)(2)(v) and (b)(2)(vi) of this section, dischargers ... seeking coverage under a general permit shall submit to the Director a written notice of intent to be covered by the general permit. A discharger ... who fails to submit a notice of intent in accordance with the terms of the permit is not authorized to discharge ... under the terms of the general permit unless the general permit, in accordance with paragraph (b)(2)(v) of this section, contains a provision that a notice of intent is not required or the Director notifies a discharger ... that it is covered by a general permit in accordance with paragraph (b)(2)(vi) of this section.

40 C.F.R. § 122.28(b)(2)(i). Section (b)(2)(v) provides:

---

[2] If CUE VI had not newly joined in this action, Defendants' motion would be an improper motion for reconsideration without first seeking leave. All parties are hereby advised that any requests for consideration must be filed in compliance with the Northern District Civil Local Rules.

5

> Discharges ... may, at the discretion of the Director, be authorized to discharge under a general permit without submitting a notice of intent where the Director finds that a notice of intent requirement would be inappropriate. In making such a finding, the Director shall consider: the type of discharge; the expected nature of the discharge; the potential for toxic and conventional pollutants in the discharges; the expected volume of the discharges; other means of identifying discharges covered by the permit; and the estimated number of discharges to be covered by the permit. The Director shall provide in the public notice of the general permit the reasons for not requiring a notice of intent.

40 C.F.R. § 122.28(b)(2)(v). Finally, section (b)(2)(vi) provides:

> The Director may notify a discharger ... that it is covered by a general permit, even if the discharger ... has not submitted a notice of intent to be covered. A discharger ... so notified may request an individual permit under paragraph (b)(3)(iii) of this section.

40 C.F.R. § 122.28(b)(2)(v). Read together, the regulations make clear that if a discharger does not file a notice of intent to be covered by the general permit, a discharger may be subject to a general permit only if (1) the state agency determines that a notice of intent would not be appropriate and so notifies the public or (2) the state agency notifies a discharger that it is covered by the general permit despite its failure to submit a notice of intent, neither of which Plaintiffs allege occurred in the instant action.

Upon further consideration, the Court finds that *Waterkeepers N. California v. AG Indus. Mfg.*, 375 F.3d 913 (9th Cir. 2004), does not provide support for requiring compliance with a general permit in the absence of the discharger filing a notice of intent. In *Waterkeepers*, the alleged discharger argued that the prevention, monitoring and reporting claims should be dismissed because, subsequent to the plaintiff providing notice of alleged violations, it cured all alleged violations by filing a notice of intent to comply with a general permit and preparing a storm water pollution prevention plan and a monitoring plan. *Id*. at 920. The Court merely held that where the plaintiff contended that the alleged compliance was inadequate, the plaintiff was not required to send a second notice of alleged violations before filing suit. *Id*. Thus, the Court did not address or consider whether the plaintiff stated a claim under the CWA based on the alleged discharger's failure to obtain coverage under and comply with a general permit. Any implied holding regarding the merits of such a claim in the absence of a discharger submitting a notice of intent is outweighed by the above cited regulations.

6

In light of such regulations, and the undisputed fact that Defendants have not filed a notice of intent to comply, the Court finds that Defendants are not subject to the benefits or the obligations of the General Industrial Permit. Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' third through eighth claims.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss Plaintiffs' third through ninth claims. Plaintiffs shall file an amended complaint in compliance with this Order by no later than June 1, 2007.

**IT IS SO ORDERED.**

Dated: May 16, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE