DOWNEY BRAND LLP
CLIFTON J. MCFARLAND (Bar No. 136940)
ANDREW L. COLLIER (Bar No.191137)
GREGORY T. BRODERICK (Bar No. 220871)
621 Capitol Mall, 18th Floor
Sacramento, CA  95814-4686
Telephone:        (916) 444-1000
Facsimile:        (916) 444-2100
cmcfarland@downeybrand.com
acollier@downeybrand.com
gbroderick@downeybrand.com

Attorneys for Defendant
CUE VI, LLC

PAUL P. "SKIP" SPAULDING III (Bar No. 83922)
R. CHRISTOPHER LOCKE (Bar No. 101704)
MATTHEW BOSTICK (Bar No. 268563)
FARELLA, BRAUN + MARTEL LLP
235 Montgomery Street, 17th Flr.
San Francisco, CA 94104
Telephone:        (415) 954-4400
Facsimile:        (415) 954-4480
sspaulding@fbm.com
clocke@fbm.com
mbostick@fbm.com

Attorneys for Defendant
UNION PACIFIC RAILROAD COMPANY

LAYNE FRIEDRICH (Bar No. 195431)
DREVET HUNT (Bar No. 240487)
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, CA 94129
Telephone:        (415) 440-6520
Facsimile:        (415) 440-4155
Email: layne@lawyersforcleanwater.com
Email: drev@lawyersforcleanwater.com

Attorneys for Plaintiffs
ECOLOGICAL RIGHTS FOUNDATION and
HUMBOLDT BAYKEEPER

*Additional Counsel for Plaintiffs on Next Page*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBOLDT BAYKEEPER, a program of Ecological Rights Foundation, and ECOLOGICAL RIGHTS FOUNDATION, a non-profit corporation, | CASE NO.  C 06-02560 JSW |
| Plaintiffs, | **CONSENT DECREE AND [PROPOSED] ORDER** |
| v. | |
| UNION PACIFIC RAILROAD COMPANY, a Delaware corporation; and NORTH COAST RAILROAD AUTHORITY, a state agency; and CUE VI, LLC, an Alaska limited liability company, | |
| Defendants. | |

DOWNEY BRAND LLP

1111940.4

1

Michelle Smith (Bar No. 233515)
HUMBOLDT BAYKEEPER
217 E Street
Eureka, CA 95501
Telephone: (707) 268-0665
Facsimile: (707) 268—8901
Email: michelle@humboldtbaykeeper.org

Frederic Evenson (Bar No. 198059)
LAW OFFICES OF FREDERIC EVENSON
424 First Street
Eureka, CA 95501
Telephone: (707) 268-890
Facsimile: (707) 268-8901
Email: ecorights@earthlink.net

DOWNEY BRAND LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONSENT DECREE AND ORDER**

This Consent Decree and Order (the "**Consent Decree**") is entered into by and between Plaintiffs Ecological Rights Foundation ("**ERF**") and Humboldt Baykeeper ("**Humboldt Baykeeper**") (collectively, the "**Plaintiffs**"), on the one hand, and Defendants CUE VI, LLC ("**CUE VI**") and Union Pacific Railroad Company ("**Union Pacific**") (collectively, the "**Defendants**"), on the other hand.  The parties shall sometimes be referred to herein individually as a "**Party**" and collectively as the "**Parties**."

**RECITALS**

A.      ERF is a 501(c)(3), non-profit, public benefit corporation organized and existing under the laws of the state of California whose stated purpose is "to educate the public about environmental practices that cause harm to human health, the environment and other natural resources; and to seek redress of environmental harms through litigation or alternative dispute resolution."

B.      Humboldt Baykeeper is a program of ERF, and a membership organization, which states its members "are comprised of local residents concerned with the health of the Humboldt Bay area environment as well as non-local members who also visit and use the Humboldt Bay area and who support ERF's efforts to protect the Humboldt Bay area."

C.      Union Pacific is a corporation duly formed, and existing under, the laws of the state of Delaware, and is the former owner of that certain real property located in Eureka, California, commonly described as the "Balloon Track" property.

D.      CUE VI is a limited liability company duly formed, and existing under, the laws of the state of Alaska, whose initials CUE stand for "Clean Up Eureka" and which is the current owner of the "Balloon Track" property, having acquired it from Union Pacific in 2006 with the intent of developing it into a mixed-use urban-infill retail and light industrial development known as the "Marina Center."

E.      The "Balloon Track" property is currently covered by Assessor Parcel Nos.  003-014-002; 003-031-003; 003-021-009; 003-031-006; 003-41-007; 003-031-012; 003-031-013; 003-041-005; 003-041-006; 003-051-001; 003-072-003 and hereinafter referred to as the "**Site**."

A map depicting the Site is attached as **Exhibit A-1** hereto.

F.     A portion of the Site had been a railroad maintenance facility operated by Southern Pacific Transportation Company ("**Southern Pacific**") until about 1985.  Shortly after railroad operations ceased, Southern Pacific removed underground and above ground storage tanks, associated piping and petroleum-impacted soil, containerized potentially hazardous materials, and removed wastewater from an oil/water separator at the Site.  Thereafter, soil sampling, groundwater monitoring, and other environmental investigations and remedial actions were performed by Southern Pacific.  Union Pacific continued these actions following a merger with Southern Pacific in 1996.

G.     On or about May 9, 2001, the California Regional Water Quality Control Board, North Coast Region (the "**Regional Water Board**") issued Clean Up and Abatement Order No. R1-2001-26 with regard to the Site (the "**CAO**") to Union Pacific, which undertook further environmental investigations, monitoring, and remedial actions in connection with the CAO.

H.     On or about May 9, 2001, the Regional Water Board issued Monitoring and Reporting Program Order No. R1-2001-29.  On or about July 22, 2002, the Regional Water Board issued a replacement Monitoring and Reporting Program, Order No. R1-2002-0082, requiring periodic monitoring of groundwater and surface water at the Site, with subsequent changes documented in a letter from the Regional Water Board dated October 7, 2003 (the "**Monitoring Program**").

I.     On or about February 1, 2006, Plaintiffs provided Union Pacific with written notice of alleged violations of the federal Water Pollution Control Act, also known as the Clean Water Act, 33 U.S.C. § 1311(a), *et seq.* (the "**CWA**"), and the federal Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B), *et seq.* ("**RCRA**") (the "**Union Pacific Notice Letter**").  North Coast Railroad Authority also was named by Plaintiffs as a responsible party for alleged CWA violations in the Union Pacific Notice Letter and in the subsequent Complaint referenced herein, but is not a party to this Consent Decree and is not included with in the terms "Defendants" as defined and used herein.

J.     On or about October 12, 2006, Plaintiffs provided CUE VI with written notice of

DOWNEY BRAND LLP

1   alleged violations of the CWA and RCRA (the "**CUE VI Notice Letter**").

2         K.     On or about April 12, 2006, the Plaintiffs filed a Complaint against, among others,

3   Union Pacific, and thereafter, the Plaintiffs amended their Complaint in the Action known as

4   *Humboldt Baykeeper, et al. v. Union Pacific, et al.*, United States District Court, Northern District

5   of California, case number C 06-02560 JSW (the "**Action**") to, *inter alia*, add CUE VI as a

6   Defendant. Plaintiffs' Third Amended Complaint for Declaratory and Injunctive Relief and Civil

7   Penalties (Dkt. No. 136) is the operative Complaint in the Action, wherein Plaintiffs allege that

8   Union Pacific and CUE VI violated the CWA and RCRA. Defendants have denied the claims

9   and allegations in the Complaint, and denied that the Plaintiffs were entitled to any relief

10  whatsoever.

11        L.     The Defendants deny that they have violated the CWA or RCRA and deny that

12  they have any liability in this Action or that Plaintiffs are entitled to any relief whatsoever. The

13  Parties agree that nothing in this Consent Decree shall be construed as an admission as to any

14  fact, finding, issue of law, or violation of law by Defendants; nor shall compliance with this

15  Consent Decree be construed as an admission by the Defendants of any fact, finding, conclusion,

16  issue of law, or violation of law.

17        M.     Notwithstanding the foregoing, each of the Parties has determined that it is in its

18  best interests to resolve the Action without the taking of any evidence or findings of fact, or law,

19  and without the time and expense of trial.

20        **NOW, THEREFORE, IT IS HEREBY AGREED BY AND BETWEEN THE**

21  **PARTIES, SUBJECT TO THE APPROVAL OF THE COURT, AS FOLLOWS:**

22        **<u>CONSENT DECREE</u>**

23        1.     <u>Jurisdiction and Venue</u>. For purposes of this Consent Decree, the Parties

24  acknowledge and agree that the United States District Court for the Northern District of

25  California has jurisdiction over the Parties and the subject matter of the Action and that venue is

26  proper in the Northern District.

27        2.     <u>Review by the United States</u>. Upon full execution by all Parties, this Consent

28  Decree shall be submitted by the Plaintiffs to the United States Department of Justice ("DOJ")

DOWNEY BRAND LLP

and the Administrator of the United States Environmental Protection Agency ("**EPA**") for the forty five (45) day statutory review period, pursuant to 33 U.S.C. § 1365(c), and the other procedures in 33 U.S.C. § 1365 associated with approval of consent decrees (the "**DOJ/EPA Review Process**").  If for any reason the EPA or DOJ (the "**United States Reviewing Agencies**") should object to this Consent Decree in the exact form presented, the Parties shall meet and confer in good faith within seven (7) calendar days of receiving the United States Reviewing Agencies objections to decide whether to modify the Consent Decree so that it is acceptable to the Parties and the United States Reviewing Agencies.

3.    Submission of the Consent Decree for Court Approval.  Plaintiffs shall submit this Consent Decree for Court approval promptly upon conclusion of the DOJ/EPA Review Process. If for any reason the Court should decline to approve this Consent Decree in the exact form presented (including whatever modifications the Parties agree to as part of the DOJ/EPA Review Process), the Parties shall meet and confer in good faith within seven (7) calendar days of receiving the Court's notice it declines to approve the Consent Decree to discuss modifying the Consent Decree so that it is acceptable to the Parties and the Court.  The Parties will meet and confer for at least thirty (30) days, and if after this thirty (30) calendar day period the Parties are unable to modify this Consent Decree in such a mutually acceptable matter, then this Consent Decree shall be immediately null and void.

4.    Effective Date.  The "Effective Date" shall be the date that the Court enters an order approving this Consent Decree following the conclusion of the DOJ/EPA Review Process (the "**Effective Date**").

5.    Termination Date.  This Consent Decree and Order shall automatically terminate upon the third anniversary of the Effective Date (the "**Termination Date**").

6.    2010-11 Interim Stormwater BMPs.  Plaintiffs acknowledge that CUE VI is currently working with the Regional Water Board to obtain approval for the implementation of best practices for the management of stormwater on the Site for the 2010-11 rainy season, in response to the Regional Water Board's April 19, 2010 letter, and subsequent correspondence (the "**2010-11 Interim Stormwater BMPs**").  Plaintiffs shall not take any action to oppose or

1   interfere with the implementation of the 2010-11 Interim Stormwater BMPs.  Plaintiffs shall not

2   provide any financial or technical aid or support to others for the purpose of opposing and/or

3   appealing the issuance of any regulatory permits, approvals or authorizations that are necessary

4   for the implementation of the 2010-11 Interim Stormwater BMPs.  CUE VI and Plaintiffs intend

5   this portion of the Consent Decree to operate as a contractual agreement in advance of the

6   expiration of the DOJ/EPA Review Process and Court approval of this Consent Decree.  To the

7   extent that the Effective Date does not occur, then this section shall be null and void.

8       7.    CUE VI's Interim Removal Action.  Upon the Regional Water Board's approval of

9   a work plan, and the issuance of all necessary permits, CUE VI shall commence and thereafter

10  diligently complete the following interim removal actions with regard to the Site which were

11  previously described in CUE VI's Supplemental Interim Remediation Plan (the "**SIRAP**"), as

12  approved and in a manner that is consistent with the contents of the Regional Water Board's June

13  18, 2009, correspondence conditionally approving the SIRAP.

14      a.    Excavation of Former General Petroleum Site.  CUE VI shall remove

15  petroleum-contaminated soil located in the former General Petroleum Site as more specifically

16  depicted on **Exhibit A-2** hereto, and backfill with clean soil material.

17      b.    Metals Impacted Soil Removal (Sample Location SHN-S-17):  CUE VI

18  shall remove metals-contaminated soils at the location on the Site identified by sample SHN-S-

19  17, as located on **Exhibit A-3** hereto.

20      c.    Metals Impacted Soil Removal (Sample Location S-5):  CUE VI shall

21  remove metals-contaminated soils at the location on the Site identified by sample Humboldt

22  Baykeeper S-5, as located on **Exhibit A-4** hereto.

23      d.    Excavation of Western Ditch.  CUE VI shall remove soil and/or sediments

24  in the Western Ditch where prior sampling activities have indicated the presence of dioxins and

25  furans, as located on **Exhibit A-5** hereto.

26      e.    Excavation of Eastern Ditch.  CUE VI shall remove soil and/or sediments in

27  the Eastern Ditch where prior sampling activities have indicated the presence of dioxins and

28  furans, as located on **Exhibit A-5** hereto.

DOWNEY BRAND LLP

CONSENT DECREE AND ORDER

f.      Removal of Debris.  CUE VI shall remove the metal and railroad tie debris piles and other debris that remain on the Site as more specifically defined in sections 4.2.1. through 4.2.7., inclusive, of the SIRAP (collectively, the "**Interim Removal Action**").

8.      Interim Removal Action Work Plan.  Not later than fifteen (15) calendar days after the Effective Date, CUE VI shall provide the Plaintiffs with a copy of the proposed workplan to implement the Interim Removal Action in the form CUE VI intends to submit to the Regional Water Board for approval (the "**Interim Removal Action Work Plan**"), which shall describe the following elements, to the extent included in the Interim Removal Action Work Plan and in a manner that is consistent with the SIRAP and the Regional Water Board's June 18, 2009, letter conditionally approving the SIRAP:

a.      characterization and confirmation sampling methodologies;

b.      excavation plans;

c.      disposal plans;

d.      backfill plans;

e.      plans to restore the Site once the removal work is complete; and

f.      permitting plans.

9.      Dispute Resolution Re Proposed Interim Removal Action Work Plan. Plaintiffs shall have fourteen (14) calendar days from receipt of the proposed Interim Removal Action Work Plan within which to provide CUE VI with any comments on the proposed Interim Removal Action Work Plan.  To the extent that Plaintiffs do not provide comments to CUE VI within fourteen (14) calendar days from receipt of the proposed Interim Removal Action Work Plan, CUE VI may submit the proposed Interim Removal Action Work Plan to the Regional Water Board.

In the event that Plaintiffs' provide comments that disagree with the proposed Interim Removal Action Work Plan, CUE VI's designated consultant(s) and the Plaintiffs' designated consultant(s) shall meet and confer within seven (7) calendar days of CUE VI's receipt of Plaintiffs' comments in a good faith effort to develop a mutually acceptable proposed Interim Removal Action Work Plan.  In the event that CUE VI and the Plaintiffs are unable to develop a

7

DOWNEY BRAND LLP

mutually acceptable proposed Interim Removal Action Work Plan within fourteen (14) calendar days of the initial meet-and-confer conference, CUE VI and the Plaintiffs shall mediate the dispute with a technically-trained mediator who is mutually acceptable.

If CUE VI and the Plaintiffs cannot identify a mutually acceptable technically-trained mediator, then each shall identify a technically-trained mediator and those two mediators shall select a third technically-trained mediator, and the three-person mediation panel shall mediate the dispute regarding the proposed Interim Removal Action Work Plan. Plaintiffs shall pay the fees and costs associated with retention of the mediator they select; CUE VI shall pay the fees and costs associated with retention of the mediator CUE VI selects; and CUE VI shall pay the fees and costs associated with the retention of the mediator the first two mediators select. The mediator(s) shall attempt to mediate any dispute to arrive at a mutually agreeable proposed Interim Removal Action Work Plan. To the extent this is not possible, the mediator(s) shall determine the contents of the proposed Interim Removal Action Work Plan. If there are multiple mediators, the content of the proposed Interim Removal Action Work Plan shall represent the unanimous views of the mediators to the maximum extent feasible.

The mediation process shall conclude no later than thirty (30) from commencement. CUE VI shall submit said proposed Interim Removal Action Work Plan to the Regional Water Board within ten (10) calendar days of the completion of the mediation process.

Plaintiffs acknowledge and agree that the process described in this section shall be the sole mechanism for the resolution of any disputes related to the Interim Removal Action and proposed Interim Removal Action Work Plan and that the Regional Water Board's decision regarding the Interim Removal Action Work Plan shall be definitive and not subject to administrative or judicial appeal.

10.      Support for Agreed Upon Interim Removal Action. If Plaintiffs and CUE VI develop a mutually acceptable proposed Interim Removal Action Work Plan through either the informal "meet and confer" or mediation processes described in the preceding section, then Plaintiffs acknowledge and agree: a) that they shall not oppose and/or appeal the issuance of any regulatory permits, approvals or authorizations, including those from the Regional Water Board,

DOWNEY BRAND LLP

1  that are necessary for the implementation of the proposed Interim Removal Action Work Plan; b)

2  that they shall not provide financial or technical aid or assistance to others for the purpose of

3  opposing and/or appealing the issuance of any regulatory permits, approvals or authorizations that

4  are necessary for the implementation of the proposed mutually acceptable Interim Removal

5  Action Work Plan; and c) that they will support the mutually acceptable Interim Removal Action

6  Work Plan and earliest possible issuance of any permits that are necessary for the implementation

7  of the mutually acceptable proposed Interim Removal Action Work Plan.

8       If Plaintiffs and CUE VI *cannot* develop a mutually acceptable proposed Interim Removal

9  Action Work Plan through either the informal "meet and confer", the mediation processes

10  described in the preceding section, or if the Plaintiffs fail to provide comments to the Interim

11  Removal Action Work Plan within fourteen (14) days of initial receipt, then Plaintiffs

12  acknowledge and agree a) that they shall not oppose and/or appeal the issuance of any regulatory

13  permits, approvals or authorizations, including those from the Regional Water Board, that are

14  necessary for the implementation of a proposed Interim Removal Action Plan; and b) that they

15  shall not provide financial or technical aid or assistance to others for the purpose of opposing

16  and/or appealing the issuance of any regulatory permits, approvals or authorizations that are

17  necessary for the implementation of the proposed Interim Removal Action Work Plan.

18       11.    Final Site Characterization Plan.  No later than 8 months prior to CUE VI's

19  application for any land use entitlements necessary for development at the Site, including but not

20  limited to the Marina Center, or such earlier time as directed by the Regional Water Board, CUE

21  VI shall provide Plaintiffs with a proposed plan for conducting soil and sediment sampling in

22  order to characterize the Site (the "**Final Site Characterization Plan**") consistent with the

23  preparation of a final Remedial Action Plan for development at the Site including but not limited

24  to the Marina Center ("**Final Remedial Action Plan**").

25       12.    Dispute Resolution Re Proposed Final Site Characterization Plan.  Plaintiffs shall

26  have fourteen (14) calendar days from receipt of the proposed Final Site Characterization Plan

27  within which to provide CUE VI with any comments on the proposed Final Site Characterization

28  Plan.  If CUE VI and Plaintiffs agree on the proposed **Final Site Characterization Plan**, it shall

DOWNEY BRAND LLP

1111940.4

9

be submitted in the approved form to the relevant federal, state, or local agencies.  CUE VI shall subsequently perform the work contemplated in the proposed **Final Site Characterization Plan** for investigation and characterization upon receipt of approval by the necessary regulatory agencies.  To the extent that Plaintiffs do not provide comments to CUE VI within 14 calendar days from receipt of the proposed Final Site Characterization Plan, CUE VI may submit the proposed Final Site Characterization Plan to the Regional Water Board.

In the event that Plaintiffs provide comments that disagree with the proposed Final Site Characterization Plan, CUE VI's designated consultant(s) and the Plaintiffs' designated consultant(s) shall meet and confer within seven (7) calendar days of CUE VI's receipt of Plaintiffs' comments in a good faith effort to develop a mutually acceptable proposed Final Site Characterization Plan.  In the event that CUE VI and the Plaintiffs are unable to develop a mutually acceptable proposed Final Site Characterization Plan within fourteen (14) calendar days of the initial meet-and-confer conference, CUE VI and the Plaintiffs shall mediate the dispute with a technically-trained mediator that is mutually acceptable.

If CUE VI and the Plaintiffs cannot identify a mutually acceptable technically-trained mediator, then each shall identify a technically-trained mediator and those two mediators shall select a third technically-trained mediator, and the three-person mediation panel shall mediate the dispute regarding the proposed Final Site Characterization Plan.  Plaintiffs shall pay the fees and costs associated with retention of the mediator they select; CUE VI shall pay the fees and costs associated with retention of the mediator CUE VI selects; and CUE VI shall pay the fees and costs associated with the retention of the mediator the first two mediators select.  The mediator(s) shall attempt to mediate any dispute to arrive at a mutually agreeable proposed Final Site Characterization Plan.  To the extent this is not possible, the mediator(s) shall determine the contents of the proposed Final Site Characterization Plan.  If there are multiple mediators, the content of the proposed Final Site Characterization Plan shall represent the unanimous views of the mediators to the maximum extent feasible.

The mediation process shall conclude no later than thirty (30) from commencement.  CUE VI shall submit said proposed Final Site Characterization Plan to the Regional Board within ten

CONSENT DECREE AND ORDER

DOWNEY BRAND LLP

(10) calendar days of the completion of the mediation process.

Plaintiffs acknowledge and agree that the process described in this section shall be the sole mechanism for the resolution of any disputes related to the Final Site Characterization Plan and that the Regional Water Board's decision regarding the Final Site Characterization Plan shall be definitive and not subject to administrative or judicial appeal.

13.    <u>Support for Agreed Upon Proposed Final Site Characterization Plan</u>.  If Plaintiffs and CUE VI develop a mutually acceptable proposed Final Site Characterization Plan through either the informal "meet and confer" or mediation processes described in the preceding section, then Plaintiffs acknowledge and agree: a) that they shall not oppose and/or appeal the issuance of any regulatory permits, approvals or authorizations, including those from the Regional Board, that are necessary for the implementation of the proposed Final Site Characterization Plan; b) that they shall support that mutually acceptable proposed Final Site Characterization Plan and the earliest possible issuance of any permits that are necessary for the implementation of the mutually acceptable proposed Final Site Characterization Plan; and c) that they shall not provide financial or technical aid or assistance to others for the purpose of opposing or appealing the mutually acceptable proposed Final Site Characterization Plan.

If Plaintiffs and CUE VI *cannot* develop a mutually acceptable proposed Final Site Characterization Plan through either the informal "meet and confer", the mediation processes described in the preceding section, or if the Plaintiffs fail to provide comments to the Final Site Characterization Plan within fourteen (14) days of initial receipt, then Plaintiffs acknowledge and agree: a) that they shall not oppose and/or appeal the issuance of any regulatory permits, approvals or authorizations, including those from the Regional Water Board, that are necessary for the implementation of the proposed Final Site Characterization Plan; and b) that they shall not provide financial or technical aid or assistance to others for the purpose of opposing or appealing the proposed Final Site Characterization Plan.

14.    <u>Final Remedial Action Plan</u>.  Not later than 30 calendar days prior to submitting a proposed Final Remedial Action Plan to the Regional Water Board, CUE VI shall provide Plaintiffs with a copy of the proposed Final Remedial Action Plan in the form CUE VI intends to

1111940.4

DOWNEY BRAND LLP

1  submit to the Regional Water Board for approval.  Plaintiffs shall have fourteen (14) calendar

2  days from receipt of the proposed Final Remedial Action Plan within which to provide CUE VI

3  with any comments to the proposed Final Remedial Action Plan.  Plaintiffs and CUE VI will meet

4  and confer in good faith with regard to the proposed Final Remedial Action Plan and Plaintiffs

5  comments thereto.  CUE VI will provide an agreed upon Final Remedial Action Plan or, absent

6  agreement, a modified Final Remedial Action Plan together with Plaintiffs' comments, to the

7  Regional Water Board, with each Party reserving their rights with respect to the submission.

8          15.     <u>General Dispute Resolution and Retention of Jurisdiction</u>.  With the exception of

9  disputes regarding the proposed Interim Removal Action Work Plan (the sole mechanism for

10  dispute resolution being set forth in section 9 above) and the proposed Final Site Characterization

11  Work Plan (the sole mechanism for dispute resolution being set forth in section 12 above), if a

12  dispute arises concerning the terms of this Consent Decree, or if any Party believes that a breach

13  of this Consent Decree has occurred, the Parties shall meet and confer within ten (10) calendar

14  days of receiving written notification from the other Party of a request for a conference.  This

15  notification shall explicitly state the nature, underlying facts and bases for the dispute or alleged

16  breach.  The Parties shall discuss the merits of the dispute and shall seek to develop a mutually

17  agreed upon plan, including implementation dates, to resolve the alleged breach or dispute.

18          If the Parties fail to meet and confer or cannot resolve the issue, and after at least seven (7)

19  calendar days have elapsed since the meet-and-confer conference occurred or should have

20  occurred, either party may bring a motion before the United States District Court for the Northern

21  District of California (Chief Magistrate Judge Maria-Elena James), which shall retain jurisdiction

22  over the action for the limited purposes of enforcement of the terms of this Consent Decree.  The

23  Parties agree that in the event that such a dispute is brought before the United States District

24  Court for the Northern District of California, the prevailing Party, as determined by the Court

25  shall be entitled to an award of reasonable attorneys' fees, expert fees and costs.  This Consent

26  Decree constitutes the Parties' contractual agreement in that regard.

27          If CUE VI claims an inability to pay as the basis for its failure to comply with any section

28  of this Consent Decree, CUE VI shall submit adequate financial documentation to Plaintiffs to

DOWNEY BRAND LLP

1    support its claim of inability to pay no later than thirty (30) days from its failure to comply.

2    Plaintiffs reserve the right to require the submission of additional financial documents in order to

3    analyze any asserted claim of inability to pay, and the party asserting an inability to pay agrees to

4    provide said documents.

5           16.    Payments.  Within seven (7) calendar days of the Effective Date, CUE VI shall

6    make an irrevocable deposit in an escrow account in the amount of $1,800,000 on behalf of itself

7    and Union Pacific in full satisfaction of any and all monetary relief that was or could have been

8    sought in the Action (the "**Escrow Account**").  The escrow agent shall make payments from the

9    Escrow Account (individually, a "**Payment**," collectively, the "**Payments**"), according to the

10   following schedule, pursuant to escrow instructions substantially identical to the form attached

11   hereto as **Exhibit B**, but which shall be updated once the Effective Date occurs to include the

12   Effective Date, the escrow company, the escrow agent, and the calendar dates (based on the

13   Effective Date) for each of the payments identified below:

14          a.    The escrow agent shall pay the Plaintiffs the sum of  $900,000 within

15   fourteen (14) calendar days of the Effective Date of this Consent Decree;

16          b.    The escrow agent shall pay the Plaintiffs the sum of $400,000 within ninety

17   (90) calendar days of the Effective Date of this Consent Decree;

18          c.    The escrow agent shall pay the Plaintiffs the sum of $500,000 within five

19   hundred forty (540) calendar days of the Effective Date (the "**Final Payment**");

20          d.    As set forth in Exhibit B, each of the Payments shall be made in the form

21   of a check payable to "*Lawyers for Clean Water Attorney Client Trust Account*" addressed to:

22   1004-A O'Reilly Avenue, San Francisco, CA 94129, sent overnight delivery.  Plaintiffs intend to

23   allocate the Payments to their attorneys' fees and costs, consultant and expert fees and costs,

24   and/or litigation expenses in the Action.

25          17.    Force Majeure.  No Party shall be considered to be in default in the performance of

26   any of its obligations when a failure to perform is due to circumstances beyond the Party's

27   reasonable control, which shall be referred to as a "Force Majeure." A Force Majeure event

28   renders performance impossible, or impracticable, and includes such events as an act of God, war,

CONSENT DECREE AND ORDER

DOWNEY BRAND LLP

1    fire, earthquake, flood, restraint by court order, or action or inaction by, or inability to obtain the

2    necessary authorizations or approval from, any governmental agency.  If a Party seeks to invoke

3    this paragraph, it shall notify the other Party in writing as soon as reasonably possible, specifying

4    the particular action that could not be performed and the specific reason for the non-performance.

5    The Parties will thereafter meet and confer regarding an alternative schedule for completion of

6    the action that could not be performed, or an alternative action.  Any dispute regarding the

7    applicability of this paragraph, or any future action to be taken, that remains after the meet and

8    confer session will be handled as a dispute pursuant to section 15.

9         18.   Releases.

10        a.   Plaintiffs' Release of CUE VI.  Upon receipt of the Final Payment,

11   Plaintiffs, on their own behalf and on behalf of their voting members, subsidiaries, successors,

12   assigns, affiliated entities, directors, officers, agents, attorneys, representatives, and employees,

13   do hereby release CUE VI and its officers, directors, employees, shareholders, agents, attorneys,

14   representatives, related or affiliated companies including without limitation Security National

15   Master Holding Company, LLC, Security National Properties, SN Servicing Corporation, or any

16   of their affiliates, parents, subsidiaries, predecessors, successors and assigns, past and present

17   (collectively, the "**Security National Entities**"), from any and all liens, losses, claims, debts,

18   liabilities, demands, obligations, promises, acts, agreements, costs, and expenses (including,

19   without limitation, attorneys' fees), injunctive relief, penalties, fines, sanctions, mitigation,

20   damages, whether known or unknown, anticipated or not anticipated, actual or contingent,

21   suspected or unsuspected, including, without limitation, those based on, arising out of, incidental

22   to, appertaining to, in connection with and/or emanating from, in any way, the facts and matters

23   set forth in the Recitals, the CUE VI Notice Letter, and/or the Action up to and including the

24   Effective Date of this Consent Decree.

25        b.   Plaintiffs' Release of Union Pacific.  Upon receipt of the Final Payment,

26   Plaintiffs, on their own behalf and on behalf of their voting members, subsidiaries, successors,

27   assigns, affiliated entities, directors, officers, agents, attorneys, representatives, and employees,

28   do hereby release Union Pacific and its officers, directors, employees, shareholders, agents,

DOWNEY BRAND LLP

1111940.4                                  14

attorneys, representatives, related or affiliated companies including without limitation, parents,

subsidiaries, predecessors, successors and assigns, past and present, from <u>any and all</u> liens, losses,

claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs, and expenses

(including, without limitation, attorneys' fees), injunctive relief, penalties, fines, sanctions,

mitigation, damages, whether known or unknown, anticipated or not anticipated, actual or

contingent, suspected or unsuspected, including, without limitation, those based on, arising out of,

incidental to, appertaining to, in connection with and/or emanating from, in any way, the facts and

matters set forth in the Recitals, the Union Pacific Notice Letter, and/or the Action up to and

including the Effective Date of this Consent Decree.

      c.     <u>Union Pacific and CUE VI's Release of Plaintiffs</u>.   Upon delivery of the

Final Payment, CUE VI and Union Pacific, on their own behalf and on behalf of their

subsidiaries, successors, assigns, affiliated entities, directors, officers, agents, attorneys,

representatives, and employees, do hereby release Plaintiffs and their member, officers, directors,

employees, shareholders, agents, attorneys, representatives, related or affiliated companies

including without limitation, parents, subsidiaries, predecessors, successors and assigns, past and

present, from <u>any and all</u> liens, losses, claims, debts, liabilities, demands, obligations, promises,

acts, agreements, costs, and expenses (including, without limitation, attorneys' fees), injunctive

relief, penalties, fines, sanctions, mitigation, damages, whether known or unknown, anticipated or

not anticipated, actual or contingent, suspected or unsuspected, including, without limitation,

those based on, arising out of, incidental to, appertaining to, in connection with and/or emanating

from, in any way, the facts and matters set forth in the Recitals and/or the Action.

      d.     <u>Waiver of California Civil Code § 1542</u>.  The Parties further expressly

waive any rights or benefits available to them under the provisions of California Civil Code §

1542, which provides as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

19.    <u>Covenant Not to Sue</u>.  Except for the pending actions identified in the last sentence

DOWNEY BRAND LLP

of this section 19, for the period beginning on the Effective Date and ending on the Termination

Date, Plaintiffs agree that neither they, their officers, directors, voting members, agents,

representatives, or affiliates will file or maintain any lawsuit against the Defendants and/or the

Security National Entities, or commence any formal administrative petition or administrative

appeal proceedings involving Defendants and/or the Security National Entities, relating in any

way, directly or indirectly, to allegations in the Union Pacific Notice Letter, the allegations in the

CUE VI Notice Letter, the allegations in the Action, the Site, and/or Clark Slough.  Regarding the

pending actions known as *Humboldt Baykeeper v. City of Eureka and CUE VI*, Humboldt County

Superior Court Case Nos. CV 090822 and CV100494, Plaintiffs agree they will not seek a

remedy that would prevent the implementation of the Interim Removal Actions or Final Site

Characterization Plan, as set forth in sections seven (7) and eleven (11).

     20.    <u>Comment on Monitoring Program</u>.  CUE VI shall continue to monitor surface

water on the Site pursuant to the Monitoring Program, in its current form or as modified by the

Regional Water Board.  Notwithstanding any other section of this Consent Decree, Plaintiffs may

comment to the Regional Water Board regarding monitoring and reporting requirements for the

Site.

     21.    <u>Dismissal</u>.  Plaintiffs will dismiss their Third Amended Complaint with prejudice

immediately after the Defendants provide confirmation of deposit of the Payments into the

Escrow Account pursuant to section 16 of this Consent Decree.

     22.    <u>Notice Sections</u>.  Any notices given hereunder shall be provided as follows:

| **If to CUE VI, LLC:** | **If to Union Pacific** |
|---|---|
| Michael Casey | Robert C. Bylsma |
| Vice President, CUE VI, LLC | Senior Regional Environmental Counsel |
| Security National Properties | Union Pacific Railroad |
| 3665 Bleckely Street | 10031 Foothills Blvd. |
| Mather, CA  95655 | Roseville, CA 95747 |
| | |
| with copy to | with copy to |
| Clifton McFarland | Christopher Locke |
| Andrew Collier | Paul P. "Skip" Spaulding, III |
| Downey Brand LLP | Farella Braun + Martel LLP |
| 621 Capitol Mall, 18th Floor | 235 Montgomery St., 17th Floor |
| Sacramento, CA 95814 | San Francisco, CA 94104 |

DOWNEY BRAND LLP

**If to Plaintiffs:**

Michelle D. Smith                        Layne Friedrich
Humboldt Baykeeper                       Lawyers for Clean Water, Inc.
217 E St                                 1004A O'Reilly Ave
Eureka, CA 95501                         San Francisco, CA 94129

Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided shall be sent both by facsimile or email transmission and first class mail to the above representatives.  Notices or communications shall be deemed given and received on the date received by facsimile or email transmission, if such notice is given by facsimile or e-email transmission to all recipients between 9:00 a.m. and 5:00 p.m. Pacific Standard Time ("PST") on a business weekday.  If notice is given by facsimile or email transmission after 5:00 pm. PST on a weekday or at any time on a weekend day, notice shall be deemed received the next succeeding weekday.  Any change of address or addresses shall be communicated in writing in the manner described above for giving notices.

23.    Construction.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms are defined by law, in the CWA, RCRA, in regulations implementing these statutes, or specifically herein.

24.    Severability.  In the event that any section or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable sections shall not be adversely affected.

25.    Counterparts.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy, .pdf, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

26.    Assignment.  Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

27.    Modification of the Consent Decree. This Consent Decree, and any sections herein, may not be changed, modified, waived, discharged or terminated, unless by a written

instrument, signed by the Parties.

28. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter. The Parties expressly understand and agree that each Party has freely and voluntarily entered into the Consent Decree with and upon advice of counsel.

29. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations and warranties (express or implied) concerning the subject matter of this Consent Decree.

30. <u>Negotiated Agreement</u>. The Parties have jointly negotiated and prepared this Consent Decree the terms and conditions of which are contractual and, as a result, any uncertainty or ambiguity herein shall be not interpreted against any one Party.

31. <u>Authority</u>. The undersigned representatives for the Plaintiffs, Union Pacific, and CUE VI each certify that they are fully authorized by the Party whom he represents to enter into the terms and conditions of this Consent Decree.

32. <u>Final Judgment</u>. The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

UNION PACIFIC RAILROAD
COMPANY

Date: 9/20/10

By: /Michael L. Whitcomb
AVP - Law Department

CUE VI, LLC

Date: _____

By: _____

DOWNEY BRAND LLP

1111940.4

18

CONSENT DECREE AND ORDER

1  instrument, signed by the Parties

2      28.    Full Settlement  This Consent Decree constitutes a full and final settlement of this

3  matter  The Parties expressly understand and agree that each Party has freely and voluntarily

4  entered into the Consent Decree with and upon advice of counsel

5      29     Integration Clause  This is an integrated Consent Decree  This Consent Decree is

6  intended to be a full and complete statement of the terms of the agreement between the Parties

7  and expressly supersedes any and all prior oral or written agreements, covenants, representations

8  and warranties (express or implied) concerning the subject matter of this Consent Decree

9      30     Negotiated Agreement  The Parties have jointly negotiated and prepared this

10  Consent Decree the terms and conditions of which are contractual and, as a result, any uncertainty

11  or ambiguity herein shall be not interpreted against any one Party

12     31     Authority  The undersigned representatives for the Plaintiffs, Union Pacific, and

13  CUE VI each certify that they are fully authorized by the Party whom he represents to enter into

14  the terms and conditions of this Consent Decree

15     32     Final Judgment  The Parties hereto enter into this Consent Decree and submit it to

16  the Court for its approval and entry as a final judgment.

17

18                                    UNION PACIFIC RAILROAD
                                       COMPANY

19     Date _____          _____
                                       By.
20

21                                    CUE VI, LLC

22     Date  9/21/2010               _____
                                       By·
23

24

25

26

27

28

1111940 4                    18

CONSENT DECREE AND ORDER

1    HUMBOLDT BAYKEEPER

2    Date: 9.20.10

3    By: Peter C. Nichols

4    ECOLOGICAL RIGHTS FOUNDATION

5    

6    Date: 9-20-10

7    By: James Lamport

8    APPROVED AS TO FORM:        For UNION PACIFIC RAILROAD

9                                COMPANY:

10   Date: _____

11                               By: _____
                                 FARELLA, BRAUN + MARTEL LLP

12                               For CUE VI, LLC:

13

14   Date: _____

15                               By: _____
                                 DOWNEY BRAND LLP

16

17                               For HUMBOLDT BAYKEEPER and
                                 ECOLOGICAL RIGHTS FOUNDATION

18

19   Date: 9/20/10

20                               By: Michelle D. Smith
                                 HUMBOLDT BAYKEEPER

DOWNEY BRAND LLP

1111940.4

19

CONSENT DECREE AND ORDER

1

2    Date: 9.20.10

3

4

5

6    Date: 9-20-10

7

8    APPROVED AS TO FORM:

9

10   Date: 8/20/10

11

12

13

14   Date: _____

15

16

17

18

19   Date: 9/20/10

20

21

22

23

24

25

26

27

28

HUMBOLDT BAYKEEPER

By: Peter C. Nichols

ECOLOGICAL RIGHTS FOUNDATION

By: James Lamport

For UNION PACIFIC RAILROAD COMPANY:

By: _____
FARELLA, BRAUN + MARTEL LLP

For CUE VI, LLC:

By: _____
DOWNEY BRAND LLP

For HUMBOLDT BAYKEEPER and
ECOLOGICAL RIGHTS FOUNDATION

By: Michelle D. Smith
HUMBOLDT BAYKEEPER

DOWNEY BRAND LLP

1111940.4

19

CONSENT DECREE AND ORDER

DOWNEY BRAND LLP

1

2     Date: 9.20.10

3

4

5

6     Date: 9-20-10

7

8     APPROVED AS TO FORM:

9

10    Date: _____

11

12

13

14    Date: 9/20/10

15

16

17

18

19    Date: 9/20/10

20

21

22

23

24

25

26

27

28

HUMBOLDT BAYKEEPER

By: Peter C. Nichols

ECOLOGICAL RIGHTS FOUNDATION

By: James Lamport

For UNION PACIFIC RAILROAD
COMPANY:

_____
By:
FARELLA, BRAUN + MARTEL LLP

For CUE VI, LLC:

By:
DOWNEY BRAND LLP

For HUMBOLDT BAYKEEPER and
ECOLOGICAL RIGHTS FOUNDATION

By: Michelle D. Smith
HUMBOLDT BAYKEEPER

1111940.4

19

CONSENT DECREE AND ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOWNEY BRAND LLP

20

CONSENT DECREE AND ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOWNEY BRAND LLP

## EXHIBITS A-1 THROUGH A-5, INCLUSIVE

### Map of Site and Locations of Interim Removal Action



Site
Existing Parcel Map

Exhibit A-1 to Consent Agreement





Exhibit A-2 to Consent Decree



NOTE:
BASE MAP ADAPTED FROM AERIAL PHOTOGRAPH TAKEN
ON SEPTEMBER 21, 1995 BY RICHARD B. DAVIS
COMPANY, INC., OF SMITH RIVER, CALIFORNIA

BROADWAY

PROPOSED
EXCAVATION AREA

SHN-S-17

MW-7A

MW-10A

LEGEND

MW-2A    MONITORING WELL LOCATION AND
         DESIGNATION (A ZONE)

MW-2B    MONITORING WELL LOCATION AND
         DESIGNATION (B ZONE)

SCALE IN FEET
0  10  20        40

ERM  Environmental
     Resources
     Management

K:\PROJECTS\73247 CUE VA\73247 SITE FIGURES.DWG   04/03/09   1=1   YMT  REV

METALS-IMPACTED SOIL REMEDIATION AREA
FORMER EUREKA RAILROAD YARD
EUREKA, CALIFORNIA

FIGURE
6

Exhibit A-3 to Consent Decree

DRAFT CONFIDENTIAL
ATTORNEY-CONSULTANT WORKPRODUCT
DO NOT CITE OR QUOTE



5

Exhibit A-4 to Consent Decree

Pltfs39187



Exhibit A-5 to Consent Decree

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOWNEY BRAND LLP

**<u>Exhibit B</u>**

**<u>Form of Joint Escrow Instructions</u>**

Andrew L. Collier                    621 Capitol Mall, 18th Floor
acollier@downeybrand.com             Sacramento, CA  95814
916/520-5244 Direct                  916/444-1000 Main
916/520-5644 Fax                     916/444-2100 Fax
                                     downeybrand.com

[**DATE**], 2010

<span style="text-decoration: underline">**Via Electronic Mail and Facsimile: [INSERT]**</span>

[**NAME**]
[**TITLE**]
[**COMPANY**]
[**ADDRESS**]

Re:     *Humboldt Baykeeper, et al. v. CUE VI, LLC, et al.*
        **United States District Court, Northern District of California Case No. C-06-02560**

        [**INSERT**]

Dear [**INSERT**]:

We represent Defendant CUE VI, LLC ("**CUE VI**") in connection with the above referenced matter (the "**Action**").  We submit these joint escrow instructions (the "**Joint Instructions**") on behalf of CUE VI and also on behalf of Defendant Union Pacific Railroad Company ("**Union Pacific**") and Plaintiffs Humboldt Baykeeper and Ecological Rights Foundation (collectively, the "**Plaintiffs**" and together with CUE VI and Union Pacific, the "**Parties**") with reference to the Action and the following:

        A.      On or about [**INSERT**], the above entitled Court approved and entered that certain Consent Decree by and between the Parties in connection with the settlement of the Action (the "**Consent Decree**").  A true and correct copy of the Consent Decree is attached hereto as **<span style="text-decoration: underline">Exhibit A</span>**.

        B.      The **Effective Date** of the Consent Decree is [**INSERT**], the date of Court approval (the "**Effective Date**").

        C.      Pursuant to section 16 of the Consent Decree, within seven (7) calendar days of the Effective Date, on behalf of itself and Union Pacific, CUE VI shall make an irrevocable deposit into an escrow account in the total amount of $1,800,000 (the "**Payment**").

        D.      Pursuant to section 16 of the Consent Decree, the Payment is to be disbursed to the Plaintiffs pursuant to the instructions specifically set forth herein, which were attached as Exhibit B to the Consent Decree.

1111968.2

Exhibit B to Consent Decree

       E.      Pursuant to section 16 of the Consent Decree, CUE VI directed the Escrow Agent [identify] to establish an escrow account, and the Escrow Agent has established an interest bearing account, number [**INSERT**] with [**INSERT**] for distribution according to these Joint Instructions (the "**Escrow Account**").

In light of the foregoing, and upon CUE VI's and Plaintiffs' receipt of your acknowledgement of these Joint Instructions, you are authorized to take the following actions.

       1.      Pursuant to section 16 the Consent Decree, disburse the following amounts, according to the following schedule, to the Plaintiffs in the form of a check made payable to "Lawyers for Clean Water Attorney Client Trust Account," addressed to 1004-A O'Reilly Avenue, San Francisco, CA 94129, via overnight delivery:

             i.      The sum of $900,000 on [**14TH CALENDAR DATE FROM EFFECTIVE DATE**];

             ii.      The sum of $400,000 on [**90TH CALENDAR DATE FROM EFFECTIVE DATE**];

             iii.      The sum of $500,000 on [**540TH CALENDAR DATE FROM THE EFFECTIVE DATE**].

       2.      All escrow fees and charges shall be borne by CUE VI.

       3.      Interest shall accrue to the funds in the Escrow Account.  At the time the final payment is made, pursuant to Section 1.iii above, accrued interest shall be paid as follows:  1) If the accrued interest exceeds the total escrow fees and charges incurred to that date, payment of accrued interest in the amount equal to such total incurred fees and charges shall be made to CUE VI.  The remainder of the accrued interest, if any, shall be divided in half, with one half paid to Plaintiffs and one half paid to CUE VI.   2) If the accrued interest does not exceed the total escrow fees and charges, all accrued interest shall be paid to CUE VI.

       4.      All Parties have had the opportunity to seek the advice of counsel or other advisor of their choice and authorize you to comply with these Joint Instructions pursuant to the signatures below.

       5.      You are authorized to accept a facsimile transmission of these Joint Instructions with facsimile signatures in lieu of original signatures.  These Joint Instructions may be executed in counterparts, each of which shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument.

**[INSERT]**
**[DATE], 2010**
Page 3

     6.     These Joint Instructions are irrevocable and cannot be modified, amended, supplemented, or rescinded in any manner without the express written notarized consent of all of the Parties.

     Please acknowledge your receipt of these instructions and your agreement to act in accordance herewith by executing and dating a copy of this letter where indicated below and returning the same to the undersigned at the address listed above, with a copy to:  Layne Friedrich, Lawyers for Clean Water, 1004-A O'Reilly Avenue, San Francisco, CA 94129.

**DOWNEY** | B R A N D

[INSERT]
[DATE], 2010
Page 4

Very truly yours,

DOWNEY BRAND LLP

Andrew L. Collier

**PARTY AUTHORIZATIONS**

CUE VI

By: _____
        Michael Casey
        Vice President

Union Pacific Railroad Company

By: _____
        Name: [INSERT]
        Title:   [INSERT]

Ecological Rights Foundation:

By: _____
        Name: [INSERT]
        Title:   [INSERT]

**DOWNEY | BRAND**

**[INSERT]**
**[DATE], 2010**
Page 5

Humboldt Baykeeper:


By:   _____
     Name:  **[INSERT]**
     Title:   **[INSERT]**


**ACKNOLWEDGED AND AGREED**:


By:   _____
     Name:  **[INSERT]**
     Title:   **[INSERT]**

**DOWNEY** | B R A N D

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOWNEY BRAND LLP

**<u>ORDER</u>**

IT IS HEREBY ORDERED that the Court shall retain jurisdiction over the Parties for the

purpose of enforcing compliance with the terms of the Consent Decree pursuant to Section 15.

All proceedings relating to enforcing compliance with the Consent Decree shall be before Chief

Magistrate Judge Maria-Elena James.

Date: <u>November 9,</u> 2010

_____

Honorable Jeffrey S. White
United States District Court Judge
Northern District of California

1111940.4

23

CONSENT DECREE AND ORDER